**United States District Court**
**Southern District of Ohio**
**Eastern Division**

Scholz Design, Inc.,

       Plaintiff,

      v.                             Case No. C2-03-498
                                      JUDGE SMITH
Brad Crosby, et al.,                  Magistrate Judge King

       Defendants.

## OPINION AND ORDER

Plaintiff, Scholz Design, Inc., brings this action against defendant Brad Crosby and unknown defendant John Doe. Plaintiff alleges copyright infringement of plaintiff's home design in violation of United States copyright laws, 17 U.S.C. § § 101 *et seq*. Defendant Brad Crosby and plaintiff both move for summary judgment on all claims. Plaintiff also moves to strike the affidavit of defendant Brad Crosby. For the reasons that follow, the Court **DENIES** plaintiff's motion to strike defendant Crosby's affidavit**, GRANTS** plaintiff's motion for summary judgment as to liability, and **DENIES** defendant's motion for summary judgment.

## I.  FACTS

Plaintiff Scholz Design, Inc. ("Scholz") is a Delaware Corporation with its principal place of business in Toledo, Ohio. Plaintiff engages in the research, development, manufacture and sale of architectural home designs and drawings. Plaintiff's home designs are sold internationally and in interstate commerce. Defendant Brad Crosby is a contractor who resides in Ashville, Ohio. Defendant specializes in the installation of various types of siding on

1

residences.  In addition, defendant builds houses on the side.  Defendant has built one or two

homes per year during the past 10 years. Defendant never uses blueprints or architectural

drawings of any kind when he builds houses, instead opting to direct the specific building

activities as he goes.            In 1996, plaintiff authored an architectural drawing of a two story

house entitled the "Sagamore Hill A 33" ("Sagamore Hill design").  In 1996, plaintiff received a

Certificate of Copyright Registration for the Sagamore Hill design from the Register of

Copyrights.  (Pl. Compl., Ex. C).  This copyright gave plaintiff exclusive rights in the Sagamore

Hill design.  At some point, plaintiff allowed the Owens Corning company, a manufacturer of

vinyl siding among other things, to use a picture of the Sagamore Hill house in one of Owens

Corning's siding brochures.  The brochure's picture of the Sagamore Hill design did not contain

a copyright notice.

        At some point in 2000 or 2001, defendant received an order of siding material, and

enclosed within the shipment was the Owens Corning brochure.  Defendant and his wife both

liked the Sagamore Hill design pictured in the brochure and decided to build a house that looked

like it ("Crosby home").  Because of the family's interest in the pictured house, defendant's wife

wished to see the interior layout.  Defendant's wife and daughter then contacted Owens Corning

to inquire about any architectural plans for the home pictured in the brochure.  Presumably, they

were told by an unknown representative of Owens Corning that the house was merely a

computer animation and that no drawings of the house existed.  Defendant was unaware of his

wife's inquiry at the time and he held no genuine concern about existing copyrights on the home.

Based on the information from Owens Corning, however, defendant decided there would not be

a copyright problem with copying the Sagamore Hill design.

Defendant built the Crosby home on a lot he owned on Hoover Road in Ashville, Ohio. At no time did plaintiff sell or license the Sagamore Hill design to defendant to use in the construction of the Crosby home.  Presumably, defendant never saw any architectural drawings or blueprints of the Sagamore Hill design.  Instead, defendant built the house to look like the picture of the Sagamore Hill design he had seen in the Owens Corning brochure.

Defendant advertised the Crosby home for sale before its construction was complete. Since the home was not completed yet, defendant decided to use a picture of plaintiff's Sagamore Hill design in the advertisement for the Crosby home.  (Pl. Memo in Supp., Ex. 3). One of plaintiff's representatives saw this advertisement and subsequently contacted defendant about the unauthorized use of the Sagamore Hill design.  Defendant had not finished construction at this time, but had presumably finished most of the exterior.  Notwithstanding plaintiff's notice of a potential copyright infringement problem, defendant proceeded to finish construction of the home.  Defendant later sold the house for $260,000.  This copyright infringement claim followed.

## II.  STANDARD OF REVIEW

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the

3

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[1] A court must disregard all evidence favorable to the moving party that a jury would not be required to believe.  *Id*.  Stated otherwise, a court must credit evidence favoring the non-moving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses.  *Id*.

Thus, the Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in *Street* identified a number of important principles applicable to summary judgment practice as a result of this 'decided change.'  For example, complex cases and cases involving state of mind

---

[1]  *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial motion for summary judgment under Fed. R. Civ. P 56.  Nonetheless, the standards applying to both types of motion are substantially the same.  One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the court, having already heard the evidence admitted during trial, considers the record in its entirety.  *Reeves*, 530 U.S. at 150.  This stands in contrast to the procedure for deciding summary judgment in that a District Court will not have heard all the evidence.  Accordingly, the non-moving party has an affirmative duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact; a court need not comb the paper record for the benefit of the moving party.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).  As such, *Reeves* did not introduce a "heightened" standard of review for summary judgment motions.

issues are not necessarily inappropriate for summary judgment. *Id*. at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "'cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street* at 1479 (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Street* at 1479. It is not sufficient for the nonmoving party merely to "'show that there is some metaphysical doubt as to the material facts.'" *Street* at 1479 (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id*. at 1479-80. That is, the nonmoving party has an affirmative duty to direct a court's attention to those specific portions of the record upon which it seeks to rely in creating a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III. ANALYSIS

### A. Plaintiff's Motion to Strike Affidavit of Brad Crosby

Plaintiff has moved to strike defendant Brad Crosby's affidavit based on alleged inadmissible hearsay contained therein and its alleged contradiction with Mr. Crosby's earlier deposition testimony. For the reasons that follow, Plaintiff's motion is DENIED.

The Sixth Circuit has stated "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)).

5

Defendant Brad Crosby has submitted two affidavits.  The first is dated February 24, 2004 and was submitted with his motion for summary judgment on March 22, 2004 (Doc. # 7). The second is dated June 14, 2004 and was submitted with his memorandum in opposition on June 14, 2004 (Doc. # 23).  Since Plaintiff is referring to the affidavit filed after defendant's deposition, which took place on March 23, 2004, plaintiff must be referring to the June affidavit.

Plaintiff fails to identify the alleged inadmissible hearsay contained in the affidavit.[2]  An examination of the affidavit reveals no statements that could be classified as hearsay.  The Court finds the affidavit contains no inadmissible hearsay.

Plaintiff also fails to specify how the affidavit contradicts defendant's earlier deposition testimony.  Presumably, plaintiff is referring to defendant's statements regarding expenses incurred in building the house.  However, defendant was uncertain about several figures he gave in his deposition.[3]  Clearly, defendant was not as prepared as he should have been and the Court encourages better preparation in any future deposition.  Nevertheless, in light of the fact that plaintiff has failed to specify the alleged contradictions, and the fact that defendant was uncertain as to several figures he gave, the Court finds plaintiff has failed to prove that defendant's June affidavit should be stricken.

## B. Abandoned Claim Against John Doe Defendant

---

[2]Defendant is presumably referring to the conversation his wife and daughter allegedly had with an Owens Corning representative in which they were told that the house depicted in the brochure was merely a computer animation.  However, the affidavit does not refer to this conversation.  The only statement in the affidavit that could remotely be considered hearsay is the following: "At some point near the end of the construction, I was contacted by a representative of the Plaintiff."  (Crosby June Affid. ¶ 9).  Based on the context with which the hearsay is alleged in plaintiff's memorandum, this does not seem to be the statement plaintiff is concerned with.  Also, this statement is too general to be considered hearsay.  Finally, even if hearsay was an issue with this statement, it would most likely qualify as a party opponent admission pursuant to Federal Rule of Evidence 801(d)(2).

[3]For example, in response to a question regarding the amount of the loan he received, defendant states: "I'm assuming one-forty or fifty.  I'm not exactly sure."  (Crosby Depo. at 39).  Defendant claims that, upon reviewing the proper documentation afterwards, he then realized the correct figure was higher.

It appears plaintiff has abandoned their claim against defendant John Doe.  In the original complaint, plaintiff named as an additional defendant the unknown architect or engineer who participated in the design of the Crosby home.  Defendant Crosby has been inconsistent with regards to this person's existence.  Paragraph three of defendant's answer specifically states: "Defendant admits that he retained an architect who created a blueprint for the design of the Crosby home...." (Def. Ans. ¶ 3).  However, defendant later denies retaining an architect or using any type of blueprints. (Crosby Depo. at 28-29).  Plaintiff only briefly discusses the John Doe defendant in their memorandum and only for the purpose of explaining defendant's contradictory statements.  Also, plaintiff's motion asks only for "an order granting summary judgment...against *defendant Brad Crosby* and denying *Brad Crosby's* motion for summary judgment...."  (Pl. Mot. S.J. at 1) (emphasis added).  Therefore, the Court deems plaintiff's infringement claim against defendant John Doe to be abandoned.

### C.  Prima Facie Case of Copyright Infringement

Plaintiff avers that a prima facie case of copyright infringement has been made with direct and circumstantial evidence. Defendant claims plaintiff has failed to prove a prima facie case.

To prove a prima facie case of copyright infringement, a plaintiff must show: (1) ownership of a valid copyright, and (2) copying of the protected work.  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Robert R. Jones, Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 276 (6th Cir. 1988); *Hi-Tech Video Prods., Inc. v. Capital Cities / ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995).  Plaintiff has provided a certificate of registration of the Sagamore Hill design, and defendant does not dispute plaintiff's ownership of the copyright.

Therefore, the only issue is the copying of the Sagamore Hill design.

Copying of a protected work may be shown by one of two ways: (1) direct evidence, or (2) circumstantially by showing access to the protected work and substantial similarity between the two works. *Nino Homes*, 858 F.2d at 276-77. *See also Wickham v. Knoxville Int'l Energy Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984). The Court will consider each one separately.

**1. Direct Evidence of Copying**

Defendant has dismissed the possibility of direct evidence and focused his arguments solely on the issue of circumstantial evidence. Defendant correctly states that "[d]irect evidence of copying is rare." (Def. Memo. Opp. at 5). Rarely will a defendant admit to copying a protected work. In this case, however, defendant has done just that.

Defendant has admitted he constructed the Crosby home to look like the exterior of the Sagamore Hill design. For example, in defendant's deposition, he clearly acknowledges his intention to build his house to look like the Sagamore Hill design. In response to a question regarding his intention to get the same look as the Sagamore Hill design, defendant states he wanted it "as close as possible." (Crosby Depo. at 25). In response to a question regarding his intention to build a home such as the one depicted in plaintiff's exhibit 3 (which is the Sagamore Hill home), defendant says, "I intended to build this house." *Id*. Defendant states the following in his June affidavit: "The home in the Lowe's book was, in fact, similar to the one I intended to build, *which was the house portrayed in the Owens-Corning brochure....*" (Crosby June Affid. ¶ 2) (emphasis added). Defendant's own statements provide direct evidence of copying.

**2. Circumstantial Evidence of Copying**

8

Again, circumstantial evidence of copying is shown through access to the protected work and substantial similarity. *Nino Homes*, 858 F.2d at 276-77. Defendant has not disputed possessing the Owens Corning brochure picturing the Sagamore Hill home design. In fact, defendant admits that the Sagamore Hill home pictured on the brochure is what gave him the idea to build the Crosby house. (Crosby Depo. at 24-26) Thus, defendant's access to the Sagamore Hill design is clearly established.[4]

Courts have traditionally used two approaches in determining substantial similarity. The most common approach, the "ordinary observer" test, gauges the similarities of the two works solely on the basis of a person's net impression without expert analysis. *Ellis v. Diffie*, 177 F. 3d 503, 506 n.2 (6th Cir. 1999). In other words, substantial similarity depends on whether an ordinary observer would conclude that the defendant's work was taken from the copyright source. *Robert R. Jones Assocs., Inc. v. Nino Homes*, 686 F. Supp. 160 (E.D. Mich. 1987), *aff'd*, 858 F.2d 274 (6th Cir. 1988). The ordinary observer test focuses on overall similarities rather than minute differences. *Ronald Mayotte & Assocs. v. MGC Bldg. Co.*, 885 F. Supp. 148, 153 (E.D. Mich. 1994) (citation omitted); *Johnson v. Jones*, 921 F. Supp. 1573, 1583 (E.D. Mich. 1996). The second approach is the "extrinsic test" and focuses on experts dissecting the works to determine if they are substantially similar. *Ellis*, 177 F.3d at 506 n.2.

The existence of differences will not negate a finding of infringement unless they so outweigh similarities that the similarities can only be deemed inconsequential. *CSM Investors,*

---

[4]Defendant has made two arguments regarding access to the copyrighted work, both of which this Court finds unconvincing. First, defendant claims he had no access to the Sagamore Hill design because he had never physically seen the actual house. Second, defendant claims he had no access to the Sagamore Hill design because he had no access to any architectural plans or drawings. Defendant cites no authority that stands for the proposition that "access" to a copyrighted design, for purposes of circumstantially proving copying, means physical access to a building or architectural drawings. Access to an image of the copyrighted home, especially an image produced by the home's original designer, suffices as "access" for these purposes.

*Inc. v. Everest Development, Ltd.*, 840 F. Supp. 1304, 1312 (D.Minn. 1994) (citation omitted).

Exact reproduction or near identity is not necessary to establish infringement. *Johnson*, 921 F.

Supp. at 1583 (citation omitted).  Finally, if similarity can only be shown by significantly

altering the plaintiff's designs, then no substantial similarity exists. *Wickham*, 739 F.2d at 1097.

The two homes are substantially similar under the ordinary observer test.[5]  In fact, the

exterior appearance of the two homes is strikingly similar.  One need only examine the two

pictures submitted with plaintiff's complaint to see all of the common characteristics.

Everything from the window placements, window style, roof lines, front porch, and several

unique characteristics such as the cupola and the second story turret, all show the substantial

similarity between the two home designs.  Although slight differences exist, such as the Crosby

home's additional front window and the extension of the front porch along the side of the house,

these small differences do not outweigh the many similarities. Moreover, most damaging to

defendant's case is his decision to use the Sagamore Hill design in advertising the Crosby home.

Clearly, defendant believed the two homes were substantially similar enough to warrant using

the Sagamore Hill design to represent what the finished Crosby home would look like.  This fact,

coupled with the striking similarity of the two homes' appearances, leads this Court to conclude

that a reasonable observer would undoubtedly find the two homes to be substantially similar.

The two homes are also substantially similar under the extrinsic test.  Each party has

submitted an expert's affidavit addressing this issue.  Plaintiff's expert, Joe St. Jean, Jr.,

---

[5]It should be noted that the Court is only focusing on the two homes' exterior, specifically the front and side, since that is the only part of the Sagamore Hill design which was allegedly infringed upon.  Defendants aver that the real issue before the Court is "whether the entire home taken as a whole could be considered substantially similar to the Sagamore Hill home...." (Def. Memo Opp. at 12).  The Court disagrees.  To allow a builder to copy the exterior of a copyrighted home design would be similar to allowing an author to copy a chapter out of a copyrighted book.  The Court is not persuaded by defendant's argument.

discusses an array of specific similarities between the two homes.[6]  Defendant's expert, Larry G. Goodwin, has discussed general differences in the two homes with less specificity than plaintiff's expert.  These differences include the Crosby home's lack of a clear Victorian style, different general character, dissimilar primary roof form, lack of intricate detailing, and lack of pleasing proportions.  (Goodwin Affid.).  Although relevant, these general stylistic differences are grossly outweighed by the numerous specific similarities offered by Mr. St. Jean, Jr.

Under both the ordinary observer and extrinsic tests for substantial similarity, the Court concludes there is sufficient circumstantial evidence to support a prima facie case of infringement as a matter of law.

### E.  Requirement of Using Plans or Architectural Drawings

In a further attempt to avoid liability, defendant claims that even if the two houses are substantially similar, defendant is still not liable for infringement since he did not copy any plans or drawings in building the Crosby home.  Essentially, defendant's position is that if the architectural drawings of the copyrighted work are not used, then a person is "entitled to reproduce a substantially identical residential dwelling...."  (Def. Memo Supp. at 7).

Defendant primarily relies on three cases in reaching this conclusion: *Scholz Homes, Inc. v. Maddox*, 379 F.2d 84 (6th Cir. 1967); *Imperial Homes Corp. v. Lamont*, 458 F.2d 895 (5th Cir. 1972); *Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274 (6th Cir. 1988).  These cases, however, no longer reflect current law because they were decided before the Architectural

---

[6]These similarities include: (1) the exact same left asymmetrical front facing gable with a lower eave line at the left and a higher eave line to the right; (2) same peak lines with a partial projection and a centered cupola with the same detail; (3) long horizontal ridge on the main house broken by the same small centered gable; (4) full-length porch with a full-length shed roof; (5) octagonal turret with an open porch design below; (6) window placement and window shape, as well as the unique characteristics of the turret windows; (7) placement of the arched panel detail over the center front window; (8) identical placement of a small window on the left portion of the home; (9) single side window on the left portion of the home; (10) projection of the left portion of the home  perpendicular to the front porch.  (St. Jean, Jr., Affid.).

11

Works Copyright Protection Act of 1990 ("AWCPA") expanded the Copyright Act's protection of architectural designs.  Pub. L. No. 101-650, § 701 *et seq*., 104 Stat. 5133 (1990).  The AWCPA amended 17 U.S.C. § 102 to include "architectural works" as a new category of copyright subject matter.  *See* 17 U.S.C. § 102(a)(8).  The Act also added the following language:

> An "architectural work" is the design of a building as embodied in *any tangible medium of expression, including a building*, architectural plans, or drawings.  The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.  17 U.S.C. § 101 (emphasis added).

Thus, the AWCPA expanded the protection for architectural designs beyond the mere plans or drawings.[7]  The three cases cited by defendant apply the pre-1990 copyright statute which did not offer "architectural works" as a subject of copyright.[8]  *See, e.g., Lamont*, 458 F.2d at 896 (explaining how the design was copyrighted under the category: "Drawings or Plastic Works of a Scientific or Technical Character."); *Nino Homes*, 858 F.2d at 278 (design copyrighted as a technical drawing under the category: "pictorial, graphic, and sculptural works....").  Clearly, the cases cited by defendant were exclusively concerned with copyright protection of the drawings themselves, as opposed to the actual design of the building.

Since the three cases cited by defendant are distinguishable from the present case, and in

---

[7]The legislative history of the act supports the proposition that an "architectural work" embodies more than the drawings.  *See* H.R. Rep. 101-735, at *6950 (Sep. 21, 1990) ("An individual creating an architectural work by depicting that work in plans or drawings will have two separate copyrights, one in the architectural work (section 102(a)(8)), the other in the plans or drawings (section 102(a)(5)).  Either or both of these copyrights may be infringed and eligible separately for damages.")

[8]This difference can be seen by examining the Court's holding in *Nino Homes*.  In reaching the conclusion that a party is not liable for infringement if they do not use the copyrighted work's plans or drawings, the Court draws a distinction between copyright protection of the actual design of a house and copyright protection of the plans themselves.  *Nino Homes*, 858 F.2d at 280.  However, with the passage of the AWCPA, copyright protection has been expanded to the actual design of the building as embodied in the building itself.  *See* 17 U.S.C. § 101.  Therefore, the focus is no longer solely on an infringer's use of plans or drawings.

light of the fact that the AWCPA has expanded copyright protection for architectural designs, the Court finds defendant cannot avoid liability by showing an absence of the use of plans or drawings.

### F.  Waiver of Copyright Protection

Defendant avers that plaintiff forfeited the right to claim copyright infringement in the Sagamore Hill design since Owens Corning was allowed to publish the design without a copyright symbol.  Plaintiff disagrees and directs the Court's attention to the definition of "Architectural Works" embodied in the Copyright Act.  Plaintiff also distinguishes defendant's precedent based on the fact that the cases deal only with infringement of documents.

Defendants have made it clear that, at one time at least, a copyright owner (or the owner's agent) who published copyrighted architectural drawings without a copyright notice would forfeit their right to claim copyright infringement in the drawings.  *See e.g., Harris Custom Builders, Inc. v. Hoffmeyer*, 92 F.3d 517, 520 (7th Cir. 1996); *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 905-06 (11th Cir. 1986).  Both of these cases involved copyrighted works that predate the Berne Convention Implementation Act of 1988 ("Berne Act"), Pub.L. No. 100-568, 102 Stat. 2853, 2857.  Since the Berne Act, courts have made it clear that a copyright owner no longer forfeits their rights through publication without a copyright notice.  *See Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 48 (5th Cir. 1995); *Innovative Networks, Inc. v. Satellite Airlines Ticketing Ctrs., Inc.*, 871 F.Supp. 709, 720 (S.D.N.Y. 1995); *Charles Garnier, Paris v. Andin Int'l, Inc.*, 844 F.Supp. 89, 93 (D.R.I. 1994). The most current version of the copyright statute states: "Whenever a work protected under this title is published...by authority of the copyright owner, a notice of copyright...*may* be placed on

13

publicly distributed copies from which the work can be visually perceived...."  17 U.S.C. §

401(a) (emphasis added).  Therefore, "affixing notice is no longer mandatory for works first

published after March 1, 1989."  *Innovative Networks*, 871 F. Supp. at 720 (citing *Direct*

*Marketing of Va., Inc. v. E. Mishan & Sons, Inc.*, 753 F.Supp. 100, 104 n.8 (S.D.N.Y. 1990)).

Plaintiff obtained the copyright in the Sagamore Hill design on July 15, 1996.  (Pl.

Compl. Ex. C).  This fact is not in dispute.  Since the copyright was issued after March 1, 1989,

and the date of publishing in the Owens Corning brochure was also after 1989, defendant's

forfeiture argument fails as a matter of law.

### G.  Defendant's Motion for Summary Judgment

Plaintiff has proven there are no genuine issues of material fact as to the copyright

infringement claim, and plaintiff is entitled to summary judgment as to defendant's liability.

Accordingly, defendant's motion for summary judgment must be denied.

### H.  Remedies

Plaintiff seeks the following remedies: (1) attorney fees, expenses, and court costs

pursuant to 17 U.S.C. § 505; and (2) actual money damages suffered by plaintiff as well as

defendant Crosby's profits from his sale of the home, pursuant to 17 U.S.C. § 504(b).[9]  For the

following reasons, the Court denies plaintiff's request for attorney fees and costs and defers the

issue of monetary damages for trial.

### 1.  Attorney Fees & Costs

Plaintiff alleges that defendant was notified of the copyright before construction of the

Crosby home was complete, and defendant's subsequent completion of the home warrants

---

[9]Plaintiff sought a preliminary and permanent injunction in the complaint.  However, plaintiff is not seeking this relief in their summary judgment motion so the Court will not consider it.

14

plaintiff's recovery of fees and costs. Defendant claims he was an "innocent infringer" without knowledge of the copyright.

The recovery of costs and fees is governed by 17 U.S.C. § 505, which provides:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party....Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs. 17 U.S.C. § 505.

The award of attorney fees and costs to a successful plaintiff in a copyright infringement action is a discretionary matter for the trial court. *Id*. Several factors are to be considered, including the need to advance considerations of compensation and deterrence. *Jackson v. Axton*, 25 F.3d 884 (9th Cir. 1994). Courts are to apply these factors in an evenhanded manner to prevailing plaintiffs and prevailing defendants alike. *Id*. A defendant's status as an "innocent infringer" will cut against awarding a plaintiff attorney fees. *Dean v. Burrows*, 732 F.Supp. 816, 826 (E.D.Tenn. 1989).

Plaintiff has failed to convince this Court of the need to award attorney fees. There is clearly a dispute as to when defendant learned of plaintiff's copyright. Both parties agree that one of plaintiff's representatives contacted defendant regarding the copyright. However, the timing of this conversation is in dispute. Plaintiff has failed to offer evidence to prove defendant's knowledge of the copyright before the exterior of the Crosby home was complete. Furthermore, defendant made some effort to learn more about the Sagamore Hill home pictured in the Owens Corning brochure before he built the house.[10] This Court finds the granting of

---

[10]Granted, this inquiry was made by defendant's wife and daughter primarily to determine whether there were any blueprints available so that defendant's wife could see the home's interior layout. Defendant claims this also confirmed a lack of copyright on the pictured home, although admittedly he had no concern about copyrights and he was not even aware of his wife and daughter's inquiry at the time. (Crosby Depo. at 75). Plaintiff has contested the admissibility of this conversation as inadmissible hearsay. The Court disagrees. The statements made by the Owens Corning employee to defendant's wife and daughter are not being offered for the truth of the matter

attorney fees, expenses, and costs unwarranted under these circumstances.

## 2. Actual Damages & Defendant's Profits

Plaintiff alleges defendant realized a profit of at least $120,000 on the sale of the house. Defendant claims he lost money on the sale since the expenses incurred in building and selling the house ended up being higher than the sale price of $260,000.[11]

The recovery of damages and profits is governed by 17 U.S.C. § 504(b), which provides:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work. 17 U.S.C. § 504(b).

The amount of defendant's profit is not clear from the record. Each party has submitted conflicting amounts of expenses incurred by defendant in constructing the Crosby house. A genuine issue of material fact exists on the amount of profit derived and it is therefore an improper issue for summary judgment. The Court leaves the determination of actual damages and defendant's profit for trial so that the amount of plaintiff's recovery can be properly ascertained.

---

asserted. That is, they are not being offered to prove that the Sagamore Hill Design was a non-copyrighted computer animation of a nonexisting house. Rather, they are being offered to show the efforts defendant's family members made to find out more about the home they wanted to build and the actions they took in doing so.

[11]Defendant claims the expenses totaled $261,131 giving him a loss of $1,131.

**IV.  DISPOSITION**

For all of the foregoing reasons, the Court **DENIES** plaintiff's motion to strike Brad

Crosby's affidavit, **GRANTS** plaintiff's motion for summary judgment as to liability, and

**DENIES** defendant Brad Crosby's motion for summary judgment.

The Clerk shall remove Docs. 7, 16, & 24 from the Court's pending motions list.

The Court will set a date for trial on damages to be granted in a separate order.

**IT IS SO ORDERED.**

/s/ George C. Smith
**GEORGE C. SMITH, JUDGE**
United States District Court